*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 21, 2023

Plaintiff-Appellee,

v

No. 362321
St. Clair Circuit Court
LC No. 21-001883-FC

STEVEN MICHAEL ROGERS,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Steven Michael Rogers, appeals by leave granted[1] the trial court's order precluding his expert witness, David Thompson, a clinical psychologist, from testifying at defendant's trial for first-degree criminal sexual conduct and distributing sexually explicit material to a child. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from defendant's alleged sexual assaults against the victim, his then-minor daughter, who alleged that defendant committed the assaults when she was 12 years old. At the preliminary examination, the victim stated that defendant sexually assaulted her while she was at home sleeping in her bed and that she woke up with defendant on top of her. She also stated that defendant sexually assaulted her at least four or five more times after the first incident. The victim testified that defendant would also frequently touch her thigh underneath the table during family dinners at home. Additionally, she stated she witnessed defendant watching pornography in the living room while she was doing homework.

---

[1] Initially, this Court denied defendant's application for leave to appeal. *People v Rogers*, unpublished order of the Court of Appeals, entered August 10, 2022 (Docket No. 362321). However, the Michigan Supreme Court remanded the case to this Court for consideration as on leave granted. *People v Rogers*, ___ Mich ___; 979 NW2d 857 (2022).

The victim first disclosed defendant's sexual assaults to her youth pastor in the summer of 2021. Shortly after, she told her therapist that since defendant's sexual assaults began, she experienced frequent nightmares involving rape. The victim stated that the nightmares of rape involved her father and that the dreams were so realistic that she thought they could be memories. She disclosed defendant's sexual assaults to her mother in August 2021, and then reported defendant's sexual assaults to the Port Huron Child Advocacy Center, where a forensic interview of the victim was conducted.

Defendant was charged with two counts of criminal sexual conduct in the first degree, MCL 750.520b, and one count of distributing sexually explicit visual or verbal material to a child, MCL 722.675. As part of of his defense, defendant made an offer of proof to have Thompson testify as an expert witness on the topic of "dream reality confusion" or "DRC." The prosecutor subsequently sought to preclude Thompson's testimony under MRE 702, or in the alternative, to conduct a *Daubert*[2] hearing on the issue of DRC.

The trial court granted the prosecutor's motion and conducted a *Daubert* hearing in which Thompson testified that there are several factors that affect the reliability of a child's memory, including "source attribution errors." Thompson testified that source attribution errors may cause a child to create a detail about a memory that never occurred. Thompson then asserted that dreams can act as a source of memory, and cited a study that claimed "between 7 and 71 percent of individuals . . . cannot accurately discriminate between something that actually occurred or something that they dreamt about." Thompson thus expressed concern that the victim was experiencing source misattribution and that her memory of defendant's sexual assaults were instead colored by the people she discussed the events with. Thompson called this concept "dream reality confusion."

During the *Daubert* hearing, Thompson admitted he did not know all of the facts of the case and could not recall the people the victim disclosed the sexual assaults to nor the number of disclosures she made. Additionally, Thompson acknowledged that there was no evidence that improper forensic protocols were used during the interview. Thompson stated that there was no evidence to suggest that the victim was actively talking about the sexual assaults with anyone other than her therapist before she reported to the police. Thompson did not provide evidence of research concerning how long memories affected by DRC last when compared to other memories, and he testified that he did not know if any research on that issue had been conducted. Additionally, Thompson acknowledged that the use of DRC cannot give a reliable conclusion as to whether a memory is real or false.

The trial court concluded that defendant would be precluded from admitting Thompson's opinion testimony concerning DRC. The court stated that "[Thompson's] testimony is just not sufficiently related to the facts" and that he did not offer testimony to show a proven or potential rate of error for any of the scientific studies on the subject. Finally, Thompson failed to testify that

---

[2] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

there were any generally accepted conclusions on DRC. The trial court thus entered an order precluding Thompson from testifying about DRC, and this appeal followed.

## II. RELIABILITY

Defendant argues that the trial court abused its discretion by concluding Thompson's proposed testimony on DRC was unreliable under MRE 702. We disagree.

We review a trial court's evidentiary ruling for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). "[T]he determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *Id.* (quotation marks and citation omitted). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.* at 217.

MRE 702 governs the admissibility of expert witness testimony:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"A court considering whether to admit expert testimony under MRE 702 acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). "An expert's opinion is admissible if it is based on the methods and procedures of science rather than subjective belief or unsupported speculation." *Unger*, 278 Mich App at 218 (quotation marks and citation omitted). The Michigan Supreme Court has offered a nonexhaustive list of factors a court may use when assessing the reliability of expert testimony, including "whether the theory has been or can be tested, whether it has been published and peer-reviewed, its level of general acceptance, and its rate of error if known." See *Kowalski*, 492 Mich at 131.

Thompson's proposed testimony did not meet the reliability requirements under MRE 702 and *Daubert*. In his testimony, Thompson stated that there is "well over a hundred years [sic] worth of research" in the field of memory. This may be, but Thompson cited to only one published study that addressed DRC, which concluded that individuals may not be able to accurately differentiate between events that actually occurred and events that occurred in dreams. The study, however, had a wide disparity of results, varying from 7% to 71% of participants reporting having been affected by DRC.

Thompson also gave conflicting testimony regarding the general level of acceptance of DRC in the field of forensic psychology. While Thompson did testify that the study of DRC has been peer-reviewed, he also stated that the forensic psychology community cannot give a reliable conclusion as to whether an individual's memory is real or not under DRC. Additionally, Thompson did not offer any testimony regarding the error rate of DRC and, when asked by the

court, could not name any standards controlling the assessment of DRC. Weighing these factors, it is apparent the trial court did not abuse its discretion when it concluded that Thompson's testimony regarding DRC was not admissible because his proposed testimony lacked reliability as a result of the lack of acceptance of DRC in the field of forensic psychology, the lack of error rates and standards used to assess DRC, and the varied results in the one published study on DRC.

In addition to the underlying problems with Thompson's proposed testimony regarding DRC, he also failed to "appl[y] the principles and methods [of DRC] reliably to the facts of the case." See MRE 702. Thompson asserted that DRC occurs when, through repeated conversations on the matter, a victim adopts the narrative of the interviewers as the truth. However, Thompson was unaware of who the victim discussed the sexual assaults with and offered no evidence that any of the people the victim did discuss the assaults with influenced her memories. Similarly, while Thompson testified that DRC can occur when an interview of a victim is performed improperly or when there is interview bias, he was unable to offer any evidence that the interview protocols used with the victim were improper or that there was interview bias when the victim was interviewed. Indeed, Thompson testified that he relied only on the counseling report from one of the victim's therapy sessions when forming his ultimate opinion. Thus, even if Thompson's testimony met the reliability standard under *Daubert*, he failed to tie his opinions regarding DRC to the facts of the case, as required under MRE 702.

## III. ABUSE TESTIMONY

Defendant next argues that Thompson's testimony is analogous to testimony in cases concerning sexual and spousal abuse and should, therefore, be admissible at trial. We disagree.

Likening DRC to battered-partner syndrome and general behavior related to child sex abusers, defendant asserts that neither this Court nor the Michigan Supreme Court have required rigid adherence to MRE 702 when it comes to explaining patterns and behaviors in abuse. In support, defendant relies on *People v Beckley*, 434 Mich 691, 724; 456 NW2d 391 (1990)—a case which was decided before the Michigan Supreme Court adopted the *Daubert* standard—for the proposition that, in certain circumstances, generalized opinion testimony is permitted to help the jurors understand the other witnesses' testimony. While the Supreme Court in *Beckley* did ultimately permit the expert testimony on child abuse syndrome, the Court also noted that "evidence of the syndrome [of reactions to child sexual abuse] is not a conclusive finding of abuse. Although syndrome evidence may be appropriate as a tool for purposes of treatment, we would hold that it is unreliable as an indicator of sexual abuse." The Court went on to state that the "expert testimony must be *tailored individually* to each particular behavior at issue in the case." *Id*. at 725 (emphasis added). Thus, even for cases involving child sexual abuse, the proffered testimony must still be applied reliably to the facts of the case, as required by MRE 702. As discussed above, Thompson did not adequately apply the principles of DRC to the facts of this case when forming his opinion. Thus, as in *Beckley*, evidence of the mere concept DRC is not a conclusive indicator that the victim was actually affected by DRC.

The Michigan Supreme Court later clarified its holding in *Beckley*, stating that experts in child abuse cases should be permitted to testify "regarding typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim or to rebut an attack on the victim's

credibility." *People v Peterson*, 450 Mich 349, 373; 537 NW2d 857 (1995). Thus, it is clear from *Beckley* and *Peterson* that the chief concern sought to be ameliorated by permitting the expert testimony was that victims of abuse often display behavior that is inconsistent with the abuse they suffer. See also *People v Spaulding*, 332 Mich App 638, 659; 957 NW2d 843 (2020) ("It has also long been recognized that the behavior of victims of varying kinds of trauma often appears irrational and confusing to most people; and expert testimony is admissible and appropriate to explain that behavior with no need to engage in an analysis of scientific reliability.") But there is no such concern here on the basis of the record before us. By his own admission, DRC may affect as few as 7% of people. Moreover, defendant offered no evidence that jurors will be so confused by the victim's testimony and other evidence such that expert testimony on the *generalities* of DRC are required. In sum, we see no relevant similarities between DRC on the one hand and the well-documented confusing behavior abuse victims exhibit on the other, and we decline defendant's invitation to extend *Beckley* and *Peterson* to the facts of this case.

## IV. RIGHT TO PRESENT A DEFENSE

Lastly, defendant argues that the trial court's preclusion of Thompson's testimony deprived him of his constitutional right to present a defense. We review de novo the question of whether a criminal defendant was deprived of his right to present a defense. *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013) (quotation marks and citation omitted).

"Criminal defendants have a constitutional right to a meaningful opportunity to present a complete defense," including the right to present witnesses in their defense. *Kowalski*, 492 Mich at 138-139 (quotation marks and citation omitted). However, the right is not absolute, and the defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 139 (quotation marks and citation omitted). Thus, while defendant has the right to present witnesses in his defense, the testimony must still comply with MRE 702. As we concluded above, Thompson's testimony fell short in this regard. Therefore, the trial court's decision to preclude Thompson's testimony did not deprive defendant of his constitutional right to present a defense, and the trial court did not abuse its discretion when it determined that Thompson's testimony regarding DRC was inadmissible.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray
/s/ Brock A. Swartzle